IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


SARA E. JOHNSON, a/k/a          )
LIBBY JOHNSON,                   )
                                )
          Plaintiff,            )
                                )
          v.                    )     CIVIL NO. 1:05CV00150
                                )
MBNA AMERICA BANK, NATIONAL      )
ASSOCIATION,                     )
                                )
               Defendant.       )


<u>MEMORANDUM OPINION</u>

BULLOCK, District Judge


        Plaintiff Sara E. Johnson a/k/a Libby Johnson ("Plaintiff")

filed this action against Defendant MBNA America Bank, National

Association ("MBNA") in the General Court of Justice, Superior

Court Division, Rowan County, North Carolina.  Defendant removed

to this court.  Plaintiff brings claims for defamation, negligent

and/or willful violation of the Fair Credit Reporting Act, 15

U.S.C. § 1681 <u>et</u> <u>seq</u>., violation of N.C. Gen. Stat. § 75-1.1 <u>et</u>

<u>seq</u>. (unfair and deceptive trade practices), and violation of

N.C. Gen. Stat. § 75-50 <u>et</u> <u>seq</u>. (prohibited acts by debt

collectors), all concerning a credit card account owed to MBNA.

Plaintiff also seeks a declaratory judgment and an injunction.

This matter is now before the court on MBNA's motion for summary

judgment as to all claims except for Plaintiff's claim for

negligent violation of the Fair Credit Reporting Act, which MBNA concedes is not subject to summary judgment.

FACTS

Plaintiff's husband, Steve C. Johnson, had a credit card account with MBNA.[1]  The history of the account is somewhat complicated.  It was opened as long ago as 1975 and it is unclear what bank originated the account or what became of the original application.  It is uncontested that MBNA acquired the account in January 2002 from First Union National Bank a/k/a Wachovia Bank. (Pl.'s Br. in Opp'n to Mot. for Summ. J. (hereinafter "Pl.'s Br."), Ex. B; MBNA's Mem. in Supp. of Partial Summ. J. (hereinafter "MBNA's Mem."), Ex. A, B & C.)  However, MBNA admits it received only limited information concerning the account history in the conversion process.  (MBNA's Mem., Ex. B, pp. 8-10.)  Thus, the account application or other originating documents are not available to the court.

Monthly statements on the account were sent to a post office box in Salisbury, North Carolina, not to the couple's residence.

---

[1]  The account has been referred to by at least two numbers: 5410-5340-0052-1196 (prior to February 2002) and 5490-9984-6242-8781 (most recently).  It is unclear why the number was changed, but the debt represented appears to be one and the same. (Compare Pl.'s Br., Ex. B, Bates #00017 with Bates #00018.) Other possible account numbers are:  5490-9989-9960-8848 and 5490-9989-9960.  (Pl.'s Dep. 109-11.)

Although Mr. and Mrs. Johnson's names appeared on the statements, Plaintiff did not know the account or the post office box existed until after Mr. Johnson died in November 2003. Shortly after his death, Plaintiff learned of the post office box, closed it, and directed that all future mailings be delivered to the couple's home address. (Pl.'s Dep. 45-49.)

In December 2003, Plaintiff received an account statement showing a balance of approximately $9,000. This was Plaintiff's first knowledge that Mr. Johnson had an account with MBNA. Taking the evidence in the light most favorable to the Plaintiff,[2] she did not apply for the account, did not authorize Mr. Johnson to open the account in her name, never made a payment on the account, never used the credit card or benefitted from it, and had no knowledge of it before Mr. Johnson's death. (Pl.'s Dep. 49-53; 105-06.) Account records show that Mr. Johnson used the card associated with the account to withdraw cash from about 1998 through the Summer of 2002. (Pl.'s Dep. 71-72; Pl.'s Br., Ex. B.) Plaintiff was unaware of those withdrawals and does not know what Mr. Johnson did with the cash. (Pl.'s Dep. 71-72.) Until his death, Mr. Johnson made the minimum payment due on the account each month from his individual bank account, not from the

---

[2] Account statements from First Union National Bank offer some support for MBNA's position that the account was a joint account, in that they are in the name of both Mr. and Mrs. Johnson. However, those records are not conclusive.

couple's joint checking account.  (Pl.'s Br., Ex. B; Pl.'s Dep. 38-39.)

On December 16, 2003, Plaintiff's attorney sent MBNA a letter stating that Mr. Johnson had died, that Plaintiff "was not aware of the existence of this account" and that "to the best of her knowledge, she has never used the account."  The letter indicated that Plaintiff's lawyer was determining what assets were available in Mr. Johnson's estate to be applied to the balance due and, in light of Plaintiff's lack of knowledge concerning the account, asked for "documentation relating to the establishment of the account and documentation which would set forth any transactions which were done by Mrs. Johnson on the account."  The letter also requested that all future correspondence concerning the account be sent to the law firm. (Pl.'s Dep. 52-56; Pl.'s Br., Ex. C.)

MBNA did not send the requested verification and, as of the date of the last filing in this case, still has not produced those records.  Nevertheless, MBNA began sending account statements in Plaintiff's name only to her home address, reflecting accruing late fees and finance charges each month. (Pl.'s Dep. 61-62.)  Those mailings began in December 2003 and continued through approximately July 2004, when the balance was adjusted to zero.  (Pl.'s Br., Ex. B.)

4

In April 2004, Plaintiff was denied credit with Sears, which prompted her to contact a credit reporting agency to determine the reason for the denial. (Pl.'s Dep. 58.) Plaintiff disputed the MBNA account to three credit reporting agencies by letters dated October 15, 2004. (Pl.'s Dep. 96.) At least two credit agencies sent Automated Consumer Dispute Verifications to MBNA concerning the account. (MBNA's Mem., Ex. C, pp. 3-4.) MBNA conducted an investigation "in accordance with its internal policies and procedures," which involved reviewing its records and asking unnamed "third parties." (MBNA's Mem. p. 6.) There is limited evidence in the record concerning the extent and nature of MBNA's investigation; as of the date of the last filing in this matter, MBNA was under a court order to make its Rule 30(b)(6), Federal Rules of Civil Procedure, witness available for deposition no later than February 6, 2006. The parties dispute whether MBNA's investigation was satisfactorily thorough.

After its investigation, MBNA concluded that Plaintiff was liable for the debt and confirmed to the credit reporting agencies that the account "was reporting correctly." (MBNA's Mem. p. 6.) Thus, the account remained on Plaintiff's credit reports.

Prior to this dispute with MBNA, Plaintiff had never been denied credit and had experienced no individual financial

5

difficulties.  Before Mr. Johnson's death, the couple had only one incident where an account of theirs was overdue.  (Pl.'s Dep. 72-74.)  After the MBNA account became delinquent, Plaintiff was denied credit by Sears and BP Oil and the interest on her MasterCard was increased.  (Pl.'s Dep. 58, 84, 103-04.) Plaintiff believes those denials were due to the MBNA account, but the evidence is not conclusive.  (Pl.'s Dep. 85-86, 97-100.) There is conflicting evidence about when MBNA charged-off the account[3] and the balance may still be included in Plaintiff's credit reports under a different account number.  (Pl.'s Dep. 86-89, 97-100, 109-13; Pl.'s Br., Ex. B, Bates #00047.)

On January 18, 2005, Plaintiff filed suit against MBNA in the General Court of Justice, Superior Court Division, Rowan County, North Carolina, alleging defamation, violation of N.C. Gen. Stat. § 75-1.1 _et_ _seq_. (unfair and deceptive trade practices), violation of N.C. Gen. Stat. § 75-50 _et_ _seq_. (prohibited acts by debt collectors), negligent and willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 _et_ _seq_. ("FCRA").  Plaintiff also seeks a declaratory judgment that Plaintiff is not indebted on the account and an injunction requiring MBNA to remove the account from Plaintiff's file at

---

[3]  Account statements show that the balance was charged off in June 2004.  (Pl.'s Br., Ex. B, Bates #00047.)  Yet, MBNA verified the account to consumer reporting agencies in October 2004.  (MBNA's Mem. p. 6.)

6

each affected credit reporting agency and enjoining MBNA from representing to any third party that Plaintiff has ever been indebted on the account. Plaintiff seeks statutory penalties pursuant to N.C. Gen. Stat. § 75-56, actual damages, including costs and reasonable attorneys' fees pursuant to the FCRA and N.C. Gen. Stat. § 75-16.1, and treble or punitive damages. (Compl. at 8.) On January 31, 2005, "MBNA requested consumer reporting agencies to delete the Account from Plaintiff's credit file." (MBNA's Mem., Ex. C, p. 4.)

MBNA filed notice of removal to this court on February 23, 2005, on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441. Jurisdiction is not contested and appears proper. In its answer, filed March 2, 2005, MBNA maintains that Plaintiff was jointly liable on the account and that it complied with all applicable laws in seeking to collect the debt and in reporting and verifying it to credit reporting agencies. (Answer ¶¶ 16, 18, 20.)[4]

On November 21, 2005, MBNA filed a motion for partial summary judgment on all counts, except for the claim of negligent violation of the FCRA (part of Plaintiff's fourth cause of action), on which it admits there is a material question of

---

[4] Discovery progressed as provided in the parties' Rule 26(f) report. However, when MBNA did not make its Rule 30(b)(6) designee available for deposition, the magistrate judge granted Plaintiff's motion to compel, ordering MBNA to do so by February 6, 2006.

fact.[5]  According to MBNA, Plaintiff's claims for defamation,
violation of N.C. Gen. Stat. § 75-1.1 et seq., and declaratory
relief are preempted by the FCRA.  Plaintiff's claim for willful
noncompliance with the FCRA fails, according to MBNA, because
Plaintiff cannot show that MBNA acted with willful intent to
injure her.  MBNA argues that it did not violate the North
Carolina debt collection statute as a matter of law.  Finally,
MBNA seeks summary judgment on Plaintiff's injunctive relief
claims on the grounds that Plaintiff has an adequate remedy at
law.


DISCUSSION


      "[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ.
P. 56(c)).  The moving party bears the burden of persuasion on
all relevant issues.  Id. at 323.  Once the moving party has met
its burden, the non-moving party must come forward with specific
facts demonstrating a genuine issue for trial.  Fed. R. Civ.

_____

      [5]  Negligent noncompliance is covered by 15 U.S.C. § 1681o,
which provides for actual damages, costs and attorney's fees.

8

P. 56(e); <u>Cray Commc'ns Inc. v. Novatel Computer Sys., Inc.</u>, 33 F.3d 390, 393-94 (4th Cir. 1994) ("the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case"). "[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

Summary judgment is proper only when there are no genuine issues of fact presented for trial and the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 255; <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

For the reasons set forth below, MBNA's motion for summary judgment on Plaintiff's First (Declaratory Judgment) and Third (violation of N.C. Gen. Stat. § 75-1.1 <u>et</u> <u>seq</u>.) Causes of Action will be allowed and MBNA's motion for summary judgment on Plaintiff's Second (Defamation), Fourth (Willful Noncompliance with FCRA), Fifth (violation of N.C. Gen. Stat. § 75-50 <u>et</u> <u>seq</u>.), and Sixth (Injunctive Relief) Causes of Action will be denied.

9

I.  Claim for Willful Noncompliance with FCRA Not Subject to
    Summary Judgment

Section 1681n of the FCRA provides for punitive damages,
costs, attorney's fees, and actual damages of not more than
$1,000 for "[a]ny person who willfully fails to comply with any
requirement imposed under this subchapter with respect to any
consumer."  15 U.S.C. § 1681n(a).  In order to show willful
noncompliance under Section 1681n, "the plaintiff must show that
defendant knowingly and intentionally committed an act in
conscious disregard for the rights of others, but need not show
malice or evil motive."  Smith v. Bob Smith Chevrolet, Inc., 275
F. Supp. 2d 808, 821 (W.D. Ky. 2003); Poore v. Sterling Testing
Sys., Inc., 2006 WL 149015, *15 (E.D. Ky. Jan. 19, 2006); see
also Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir.
1997); Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d Cir.
1996); Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986)
(punitive damages allowed where defendant's conduct "involved
willful misrepresentations or concealments").

MBNA argues that its actions following the death of
Mr. Johnson do not, as a matter of law, rise to the level of
willfulness necessary under Section 1681n.  MBNA says that, at
worst, it was negligent,[6] and urges this court to adopt the

_____

      6  Specifically, MBNA argues that Plaintiff's lawyer's
letter of December 16, 2003, which stated that Plaintiff was
"unaware" of the account, suggested the debt would be paid from
Mr. Johnson's estate, and asked for verification of the debt, did
not explicitly deny that the debt was Plaintiff's responsibility
following the death of Mr. Johnson.  As such, MBNA argues that
                                              (continued...)

10

approach used and outcome reached by another district court in this state, where the judge found in MBNA's favor on this issue. See Schade v. MBNA Am. Bank, N.A., 2006 WL 212147 (W.D.N.C. Jan. 26, 2006). However, the facts in this case are significantly different from the facts in Schade and summary judgment is not appropriate here. In Schade, the plaintiff complained that MBNA wrongfully reported a delinquent account to his credit rating, arguing that he was not jointly liable on the account. However, the plaintiff had made at least one payment on the account, knew about the existence of the account, had spoken with MBNA about the account, and had likely benefitted from the direct deposit of cash from the account into bank accounts plaintiff shared with his then-wife. The plaintiff's wife admitted that she had provided plaintiff's name and other identifying information to MBNA when she opened the account in both of their names. Account statements had been mailed to the couple's home for more than nine years. Id. at *2.

In contrast, the evidence in this case, viewed in the light most favorable to Plaintiff, is that she never applied for, knew of, used, paid on or benefitted from the account in any way. All account activity was performed by her late husband, who apparently took steps to avoid Plaintiff learning of the account, going so far as to have statements sent to a post office box

---

[6](...continued)
the letter did not create a doubt, actual or otherwise, that the account was Plaintiff's or that it was reporting correctly. (MBNA's Reply Br. 5.)

instead of the couple's home.  Moreover, Plaintiff alerted MBNA

of her position promptly after her husband's death.  In response,

MBNA has been unable to produce clear evidence of Plaintiff's

liability on the account.[7]  The extent and care of MBNA's

---

[7]  MBNA says its inability to produce a signed application
indicating that Plaintiff opened the account is "irrelevant."
According to MBNA, it is obligated to retain such records for
only two years, pursuant to 12 C.F.R. § 226.25(a) (2005) (Truth
in Lending, Regulation Z).  (MBNA's Reply Mem. at 5.)  However,
Section 226.25 concerns only those records which constitute
"evidence of compliance" with Regulation Z and states that the
two years begin to run "after the date disclosures are required
to be made or action is required to be taken."  Thus, it may not
apply in this case at all.  Moreover, MBNA has not produced any
records to support its assertion that Plaintiff is a joint
obligor on the account, such as the original application,
Plaintiff's signature for purchases made with the card, her
involvement with or use of the cash withdrawn on the account, or
payments on the account made by Plaintiff.  Instead, MBNA relies
on computerized notations that are inconclusive because (a) they
are MBNA's internal records (or worse, records kept by its
predecessor bank), (b) they are encoded in such a way as to make
them difficult to decipher (at least to anyone not familiar with
MBNA's system), (c) they go back only as far as 2002, and
(d) they may or may not support MBNA's position.  (MBNA's Mem.,
Ex. A.)  The court is not aware of controlling authority on the
question of what specific documentation is required in order to
establish joint liability on credit card debt.  Cases considering
the question in the context of creditors' claims in bankruptcy
proceedings are instructive.  Although courts disagree about the
specificity of proof required to file a credit card claim in
bankruptcy, many hold that credit card debt is based on a
"writing," that the relevant writing is the original credit
agreement and/or records of the transactions performed with the
credit card, and that those writings must be submitted in order
to prove the claim.  See, e.g., In re Burkett, 329 B.R. 820, 827
(Bankr. S.D. Ohio 2005) (when a credit card debt is disputed,
some proof of liability is required); In re Shank, 315 B.R. 799,
808-10 (Bankr. N.D. Ga. 2004) ("The fact that a party's business
practices make it difficult to produce evidence to prove its case
does not permit courts to ignore evidentiary rules in deciding a
disputed matter.").  It is axiomatic that a bank must have more

(continued...)

12

investigation is unknown at this time (due in part to MBNA's failure to make its representative available for deposition), and the court cannot conclude as a matter of law that the investigation satisfied MBNA's obligation to perform a "careful inquiry," as required under the FCRA.  <u>Linda Johnson v. MBNA Am. Bank, N.A.</u>, 357 F.3d 426, 430 (4th Cir. 2004).

It is for a jury to decide what investigation MBNA performed and if its actions were in willful disregard of Plaintiff's rights under the FCRA when it confirmed the account was Plaintiff's obligation and continued to attempt to collect and report it to various credit reporting agencies.  Reasonable jurors could disagree on these facts, and it is not for the court to weigh the credibility of witnesses or to characterize MBNA's actions as reasonable, negligent, or willful.  <u>Accord</u> <u>Johnson</u>, 357 F.3d at 430-31 (noting Congress must have intended to require "some degree of careful inquiry by creditors" and more than a "superficial" investigation, and finding that it was for the jury to decide whether MBNA's investigation into the consumer's dispute was sufficient); <u>Akalwadi v. Risk Mgmt. Alternatives,</u>

<hr/>

    <sup>7</sup>(...continued)
than a person's name on the account statement to establish liability.  The court cannot accept MBNA's assertion that Section 226.25 absolves it of an obligation to produce any proof of Plaintiff's liability on the account.  <u>Accord</u> <u>Linda Johnson v. MBNA Am. Bank, N.A.</u>, 357 F.3d 426, 432 (4th Cir. 2004) ("jury could reasonably conclude that if . . . MBNA no longer had the application, they could have at least informed the credit reporting agencies that MBNA could not conclusively verify that Johnson was a co-obligor"); <u>In re Shank</u>, 315 B.R. at 810.  <u>Contra</u> <u>Schade</u>, at *5.

13

<u>Inc.</u>, 336 F. Supp. 2d 492, 510 (D. Md. 2004) ("It is generally a question of fact for the jury as to whether a reasonable investigation was conducted."). In short, these facts make this case distinguishable from <u>Schade</u> and create an issue of material fact concerning whether MBNA's actions can be considered "willful" under Section 1681n.

II.  <u>Defamation Claim Not Subject to Summary Judgment</u>

Plaintiff asserts a cause of action for defamation, arising out of MBNA's allegedly false reporting of the delinquent account to credit reporting agencies. (Compl. ¶¶ 19-23.) MBNA argues that it is protected from such a claim pursuant to the "qualified immunity" or preemptive effect of Section 1681h(e) of the FCRA and, in the alternative, that Plaintiff's defamation claim is preempted by Section 1681t. The court disagrees. Plaintiff's defamation claim survives summary judgment for the reasons set forth below.

A.  <u>Section 1681h(e) does not preempt the defamation claim</u>

Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding <u>in the nature of defamation</u>, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] <u>except as to false information furnished with malice or willful intent to injure such consumer.</u>

14

15 U.S.C.A. § 1681h(e) (2002) (emphasis added).

Thus, unless the Plaintiff can raise a material issue of fact as to whether MBNA acted with malice or willful intent to injure her, her defamation claim is preempted by the FCRA. The question turns on whether the creditor had "doubt" that the information it reported was accurate. See Schade, at *6-7 (citing inter alia Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980) (defamation claim preempted by § 1681h(e) because plaintiff could not prove credit agency provided false information "with malice or willful intent" to injure him); Moore v. Equifax Info. Servs. LLC, 333 F. Supp. 2d 1360, 1367 (N.D. Ga. 2004) (furnisher of credit information granted summary judgment for lack of malice where "there [was] no evidence that [it] doubted the accuracy of the information it reported to Equifax"); Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 90 (D. Mass. 2001) (state common law defamation claim preempted by section 1681h(e) because "plaintiffs fail[ed] to adduce any evidence showing that Equifax knew the plaintiffs' credit history it furnished was false or that it entertained actual doubt regarding the veracity of such information"); Wiggins v. Equifax Servs., Inc., 848 F. Supp. 213, 226 (D.D.C. 1993) (observing that "malice" requires that the speaker either know information is false, or act with reckless disregard for its truth or falsity, and that "reckless disregard," in turn, requires evidence that the speaker entertained actual doubt about the truth of the

statement)).[8]  The court recognizes that "proving 'malice' is a
higher standard than establishing willfulness under § 1681s-
2(b)." <u>Schade</u>, at *7 (citing <u>Cushman v. Trans Union Corp.</u>, 115
F.3d 220, 227 (3d Cir. 1997), and <u>Pinner v. Schmidt</u>, 805 F.2d
1258, 1263 (5th Cir. 1986)).  Nevertheless, on the record now
before this court, a reasonable jury could find that MBNA had
"actual doubt" about the veracity of the information it reported
and acted with malice or willful intent to injure Plaintiff.[9]
Thus, MBNA is not necessarily entitled to the immunity provided
by Section 1681h(e) and summary judgment will be denied.

---

[8]  Section 1681h(e) may not even apply to the acts of MBNA
in this case.  On its face, that section provides qualified
immunity only for "reporting of information" which is "based on
information disclosed pursuant to section 1681g, 1681h, or 1681m
of this title, or based on information disclosed by a user of a
consumer report to or for a consumer."  The information about
which Plaintiff complains and the disclosures upon which her
defamation action is based were <u>not</u> disclosed pursuant to
Sections 1681g (which covers disclosures by consumer reporting
agencies to consumers), 1681h (which also covers disclosures by
consumer reporting agencies), or 1681m (which covers the duties
of users of consumer reports who take adverse action against the
consumer on the basis of information contained in consumer
reports) and also were <u>not</u> disclosed "by a user of a consumer
report to or for a consumer."  Thus, even if there were not a
material issue of fact on the question of malice or willful
intent to injure, Section 1681h(e) still may not provide MBNA
immunity under these facts.

[9]  "[W]here the factual dispute concerns actual malice, . .
. the appropriate summary judgment question will be whether the
evidence in the record could support a reasonable jury finding
either that the plaintiff has shown actual malice by clear and
convincing evidence or that the plaintiff has not."  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 255-56 (1986).

B.  Section 1681t(b)(1)(F) does not apply to defamation
    claims

MBNA argues that even if Section 1681h(e) does not preempt Plaintiff's defamation claim, Section 1681t(b)(1)(F) does.  The court disagrees.

Section 1681t, titled "Relation to State Laws," provides:

(a) In general

> Except as provided in subsection[] (b) . . . of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, . . . except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

(b) General exceptions

No requirement or prohibition may be imposed under the laws of any State--

(1) with respect to any subject matter regulated under-- . . .

> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--
>
>> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>>
>> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996); . . . .

15 U.S.C.A. § 1681t (2003).

In short, Section 1681t prohibits states from regulating the same subject matter covered by Section 1681s-2.  It dictates

17

that, to the extent states attempt to do so in a way that is
inconsistent with Section 1681s-2, those laws are effectively
annulled.

There is disagreement among the circuits concerning
1681t(b)(1)(F)'s applicability to defamation actions.  Some
courts find that it preempts all state claims, whether based on
common law or statute, including defamation.  See Riley v. GMAC,
226 F. Supp. 2d 1316, 1322 (S.D. Ala. 2002); Hasvold v. First USA
Bank, N.A., 194 F. Supp. 2d 1228 (D. Wyo. 2002); Jaramillo v.
Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 363, vacated
in part on reconsideration, 2001 WL 1762626 (E.D. Pa. 2001).
Other courts, including those within the Fourth Circuit, take a
more measured approach and conclude that Section 1681t preempts
only state statutes and regulations, not defamation actions and
similar torts.  Schade, at *6-7 (ignoring Section 1681t in
relation to defamation claim and applying only Section 1681h(e));
Barnhill v. Bank of Am., N.A., 378 F. Supp. 2d 696, 700 (D.S.C.
2005); Jeffery v. Trans Union, LLC, 273 F. Supp. 2d 725, 727
(E.D. Va. 2003); Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517
(N.D. Tex. 2003).  In support of the more limited application of
Section 1681t(b)(1)(F), courts note that it specifically excepts
statutes in California and Massachusetts, which suggests that it
was meant to cover all other state statutes.  Jeffery, 273 F.
Supp. 2d at 727; Carlson, 259 F. Supp. 2d at 521.  In addition,

18

courts point out that defamation actions are specifically addressed by Section 1681h(e), which provides an exception for cases involving malice or willful intent to injure.  If one interpreted the more-general provisions of Section 1681t to preempt all defamation actions, it would moot Section 1681h(e). It is preferable to interpret the FCRA in a way that gives effect to all of its provisions and that is consistent with the canon of statutory construction which requires the specific statute to prevail over the more general one.  <u>Barnhill</u>, 378 F. Supp. 2d at 700; <u>Jeffery</u>, 273 F. Supp. 2d at 727.

The court agrees with the conclusion reached in the <u>Barnhill</u> and <u>Jeffery</u> cases and finds that Section 1681h(e), not Section 1681t(b)(1)(F), controls the question of whether Plaintiff's defamation claim is preempted by the FCRA.


III. <u>Claim for Violation of N.C. Gen. Stat. § 75-50 et seq.</u>
<u>Not Subject to Summary Judgment</u>

Plaintiff's fifth cause of action is for violation of N.C. Gen. Stat. § 75-50 <u>et seq.</u>, governing prohibited acts by debt collectors ("North Carolina Debt Collection Act" or "NCDCA"). MBNA argues that it is entitled to summary judgment on this claim because it has not violated the NCDCA.[10]  In support of its

_____

[10]  MBNA does not argue that this claim is preempted.  The parallel federal law, 15 U.S.C. § 1692 <u>et seq.</u> ("Fair Debt Collection Practices Act" or "FDCPA"), does not apply to MBNA
(continued...)

motion, MBNA asserts that it only sent account statements to
Plaintiff's home and never coerced or harassed her.  MBNA argues
"there is no evidence on the record to suggest that MBNA even
spoke with Plaintiff regarding the debt on the Account."  (MBNA's
Mem. p. 18.)

However, as MBNA points out in its brief, there are three
required elements of a claim under the NCDCA:  (1) an unfair act,
(2) in or affecting commerce, (3) that proximately caused
Plaintiff injury.  Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 530
S.E.2d 865, 868 (N.C. App. 2000).  MBNA cannot prove the
nonexistence of any of these elements.[11]  Instead, the record
contains sufficient evidence upon which a reasonable jury could
conclude that MBNA's actions were "unfair" attempts to collect a
debt, in violation of the NCDCA.  There are material questions of
fact concerning what MBNA knew, should have known and could have
learned about Plaintiff's liability on the account before

---

[10](...continued)
because it does not qualify as a "debt collector" under the
FDCPA.  See Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 530 S.E.2d
865, 868 (N.C. App. 2000) ("Unlike the FDCPA, our state act does
not limit the definition of debt collector only to those
collecting debts on behalf of others; any person engaging in debt
collection from a consumer falls within the statutory
definition.") (citing N.C. Gen. Stat. § 75-50(3)).

[11]  Plaintiff has met her burden on the second and third
elements by alleging acts conducted by MBNA in its normal, daily
operations and by alleging injury to her credit rating and
emotional injuries.  Davis Lake, 530 S.E.2d at 869; HAJMM Co. v.
House of Raeford Farms, Inc., 403 S.E.2d 483, 493 (N.C. 1991).

20

reporting it and re-reporting it to credit reporting agencies and before sending her bills. The absence of vulgar language or harassing phone calls limits, but does not defeat, Plaintiff's fifth cause of action.[12] Accordingly, Plaintiff's claim under the NCDCA is not subject to summary judgment.

IV. <u>Claim for Violation of N.C. Gen. Stat. § 75-1.1 et seq. is Subject to Summary Judgment</u>

Plaintiff's third cause of action is for violation of the North Carolina Unfair and Deceptive Trade Practice Act, N.C. Gen. Stat. § 75-1.1 <u>et seq.</u> ("the NCUDTPA"). MBNA argues that this claim is subject to summary judgment on the grounds that (1) the claim is preempted by section 1681t(b)(1)(F) and/or section 1681h(e) of the FCRA, and (2) MBNA did not violate the NCUDTPA as a matter of law.[13]

The court will grant summary judgment on this cause of action for two reasons. First, as a matter of North Carolina

_____

[12] <u>See</u>, <u>e.g.</u>, N.C. Gen. Stat. § 75-51 (prohibiting unfair acts such as "[m]aking or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt").

[13] MBNA urges the court to determine whether its investigation and reporting of the account was unfair or deceptive, rather than to allow the jury to decide. (MBNA's Mem. pp. 16-17.) However, as discussed <u>supra</u>, it would be improper for the court to make such a determination when the extent of MBNA's investigation and knowledge concerning Plaintiff's liability on the account is so unclear.

21

law, "[i]f the abusive conduct alleged pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy." DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003) (citing N.C. Gen. Stat. § 75-56). "Claims can only be asserted under the [North Carolina] UDTPA if there is some abusive conduct alleged to have occurred outside the realm of debt collection." Id.[14] Here, Plaintiff argues that MBNA's actions in sending account statements to her home and reporting the account to her credit file were all attempts to collect the debt. (Pl.'s Br. pp. 10-11.) Accordingly, she has alleged only actions encompassed within the NCDCA, making the more-general provisions of the NCUDTPA inapplicable.

Second, to the extent Plaintiff attempts to sue MBNA under N.C. Gen. Stat. § 75-1.1 for actions other than debt collection,[15] those statutory claims would be preempted pursuant to Section 1681t of the FCRA. (See discussion in part II(B) of this memorandum opinion, supra.) See also Spitzer v. Trans Union LLC, 140 F. Supp. 2d 562 (E.D.N.C. 2000) (holding FCRA preempted

---

[14] See also Talbert v. Mauney, 343 S.E.2d 5, 8 (N.C. App. 1986) (recognizing that although the specific practices prohibited in the NCDCA are examples of unfair or deceptive acts in commerce within the broader scope of N.C. Gen. Stat. § 75-1.1 et seq., those delineated practices are the exclusive acts prohibited in the area of debt collection under the NCDCA).

[15] Plaintiff relies on MBNA's alleged violations of the NCDCA to constitute "a per se unfair and deceptive trade practice" under Section 75-1.1. (Pl.'s Br. pp. 9-10.)

consumers' state and common law claims against credit reporting agency, including claims for violation of NCUDTPA),[16] aff'd, 3 Fed. Appx. 54 (4th Cir. 2001); DiPrinzio v. MBNA Am. Bank, N.A., 2005 WL 2039175 (E.D. Pa. 2005) (granting summary judgment on claim under state unfair trade practices law because it was preempted by Section 1681t(b)(1)(F)).[17]

Accordingly, MBNA's motion for summary judgment on Plaintiff's claims under N.C. Gen. Stat. § 75-1.1 et seq. will be allowed.

---

[16]  In Spitzer, the district court noted that "Plaintiffs have failed to argue and thus appear to have abandoned their state and common law claims." 140 F. Supp. 2d at 566. (Those claims included a claim under the NCUDTPA, but it is unclear what else.) Then, without explanation or mention of Section 1681t, the Spitzer court applied Section 1681h(e) of the FCRA to the "state and common law claims," concluding that they were all preempted. For the reasons set forth supra, this court does not adopt the same approach, but does concur with the result on the NCUDTPA claim.

[17]  Cf. Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162, 167 (4th Cir. 1985) ("We do not believe that the North Carolina legislature would have intended § 75-1.1, with its treble damages provision, to apply to securities transactions which were already subject to pervasive and intricate regulation under the North Carolina Securities Act . . . as well as the [federal securities laws]."); Sideshow, Inc. v. Mammoth Records, Inc., 751 F. Supp. 78, 80 (E.D.N.C. 1990) (citing several North Carolina cases which hold that, consistent with the legislative purpose of the NCUDTPA, when "there exist[s] a 'pervasive' federal scheme for regulating" the subject matter of the claim and/or a separate state statute, it does not also fall within the scope of the NCUDTPA).

## V. Claim for Injunctive Relief Not Subject to Summary Judgment

When Plaintiff filed her complaint about one year ago, she sought an injunction requiring MBNA "to remove the Account from her credit file at each credit-reporting agency to which it has reported the Account and enjoining it from representing to any third party, including credit-reporting agencies, that the Plaintiff has ever been indebted on the Account." (Compl. ¶ 43.) Through discovery, MBNA produced evidence tending to show that it charged off the account in June or July 2004, and that it is no longer reporting to Plaintiff's credit file. (Pl.'s Dep. 86-87 & Ex. 8 & 9.) Relying on that evidence, MBNA argues that "Plaintiff's only remedy at this stage is money damages, rendering her claim for injunctive relief moot." (MBNA's Mem. pp. 20-21.)

However, the evidence is not conclusive and it remains unclear whether the account is completely removed or still reporting to Plaintiff's credit rating under a different account number. (Pl.'s Dep. 86-89, 97-100, 109-13; Pl.'s Br., Ex. B, Bates #00047.) Given the record evidence, it is impossible to determine whether Plaintiff still requires an injunction in order to be made whole. If the account is not completely removed, Plaintiff may not have a full and adequate remedy at law and may require equitable relief. It would be inappropriate at this stage to enter summary judgment on this claim. Accordingly,

24

MBNA's motion for summary judgment on Plaintiff's sixth cause of action will be denied.


VI.  Claim for Declaratory Judgment is Subject to Summary
     Judgment

Plaintiff's first cause of action is for "a declaration that she did not contract with the Defendant on the Account or guaranty the Account to the Defendant and that she is not indebted to it on the Account." (Compl. ¶ 18.) MBNA argues that the claim is "in effect" a request that this court "declare that MBNA's records for the Account are inaccurate." (MBNA's Mem. p. 20.) MBNA then argues that Plaintiff lacks standing to make such a request because the FCRA requires MBNA to provide accurate information to credit reporting agencies, yet provides no private right of action to enforce that duty. (Id., citing § 1681s-2(a)). The court need not address this argument because Plaintiff's declaratory judgment claim will be dismissed on other grounds.

Although Rule 57, Federal Rules of Civil Procedure, makes it clear that the existence of another adequate remedy does not preclude a judgment for declaratory relief "where it is appropriate," when coercive relief is available through a judgment for damages and an injunction, as in this case, entertaining an additional claim for declaratory relief will not result in a more expeditious or economical determination of the

25

issues.  A mandatory injunction, if warranted, can provide the same result the Plaintiff seeks in her declaratory judgment claim.  Therefore, the court in its discretion will decline to entertain Plaintiff's Count One claim for declaratory judgment.  MBNA's motion for summary judgment on this claim will be granted.[18]

CONCLUSION

For the foregoing reasons, MBNA's motion for summary judgment on Plaintiff's First (Declaratory Judgment) and Third (violation of N.C. Gen. Stat. § 75-1.1 et seq.) Causes of Action will be allowed and MBNA's motion for summary judgment on Plaintiff's Second (Defamation), Fourth (Willful Noncompliance with FCRA), Fifth (violation of N.C. Gen. Stat. § 75-50 et seq.), and Sixth (Injunctive Relief) Causes of Action will be denied.

---

[18]  Although not argued by MBNA, it is possible that claims for declaratory judgment are preempted by Section 1681t of the FCRA.  See, e.g., Anderson v. Capital One Bank, 224 F.R.D. 444, 449 (W.D. Wis. 2004) (credit card applicants who brought suit against bank under FCRA were not entitled to declaratory judgment because, inter alia, nothing in FCRA suggests that plaintiffs were entitled to anything other than damages, attorney's fees and costs); In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 340 (N.D. Ill. 2002) (denying plaintiffs' request under Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, for a declaration that Trans Union had violated the FCRA).

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_Frank W. Bullock, Jr._
United States District Judge

March 9, 2006

27